# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

**CLARENCE M. EASTERLING,**

        Plaintiff,

    **-vs-**                   **Case No. 14-CV-1392**

**MICHAEL THURMER, et al.,**

        Defendants.

## DECISION AND ORDER

       Clarence M. Easterling, a Wisconsin state prisoner, filed an action under 42 U.S.C. § 1983, alleging that his civil rights were violated when defendants refused his request for visitation with his daughter. On October 13, 2015, the defendants filed a motion for judgment on the pleadings on behalf of certain defendants. (ECF No. 42.) Following multiple extensions of time, the plaintiff responded on December 14, 2015 (ECF No. 59), and the defendants replied on December 18, 2015 (ECF No. 60). The defendants argue that the claims against Michael Thurmer, Richard Raemisch, Pamela Fuller, Philip Kingston, Jane Doe (probation and parole agent from 2004-2005), and Cindy O'Donnell should be dismissed as barred by the statute of limitations and/or for lack of personal involvement. For the reasons stated below, the Court grants the defendants' motion in part.

# I.     Factual Background

On December 2, 2004, the plaintiff's three-year old daughter, through her mother, submitted a request for visitation with the plaintiff.  At the time, the plaintiff was incarcerated at Waupun Correctional Institution (WCI). Fuller, Kingston, and the plaintiff's parole agent denied the visitation request. The plaintiff filed an inmate complaint regarding the denial, which was dismissed by Thurmer. The plaintiff appealed, and Raemisch affirmed the dismissal.

In 2005, Easterling wrote Kingston and asked if he would ever be allowed to visit with his daughter.   Kingston responded that visitation depended on the plaintiff and would not be allowed until the plaintiff completed the recommended programming. At the time, there were four programs recommended in the plaintiff's file:    vocational programming, anger management, sex offender treatment, and cognitive intervention.  The plaintiff does not allege that he had any other contact with Fuller, Kingston, Thurmer, Raemisch, or his parole agent after 2005, although he states "visitation between [the plaintiff] and [his daughter] was continuously denied."  (ECF No. 59 at 4.)

The plaintiff alleges that he made another request for visitation with his daughter in 2013, when he asked Wisconsin Secure Program Facility (WSPF) staff whether he would ever receive visits from his daughter.  Staff responded that he would not be allowed visitation with his daughter until he completed

- 2 -

Sex Offender Treatment programming. The plaintiff filed an inmate complaint regarding the denial, the dismissal of which O'Donnell affirmed.

## II.    Legal Standard

A motion for judgment on the pleadings is reviewed "under the same standard as a motion to dismiss under Rule 12(b):  the motion is not granted unless it appears beyond doubt that the [nonmovant] can prove no facts sufficient to support his [position.]" *Flenner v. Sheahan*, 107 F.3d 459 (7th Cir. 1997); Fed. R. Civ. P. 12(b) and (c).  When considering a motion for judgment on the pleadings, a court must view all allegations in the light most favorable to the nonmoving party, and must further draw all reasonable inferences in favor of that party. *Kiddy-Brown v. Blagojevich*, 408 F.3d 346, 355 (7th Cir. 2005).

## III.    Analysis

A. Statute of Limitations

Section 1983 actions have a six-year statute of limitations in Wisconsin. *Wudtke v. Davel*, 128 F.3d 1057, 1061 (7th Cir. 1997).  The plaintiff filed his complaint on November 3, 2014, nearly a decade after his last interaction with Kingston in 2005.  Simple math would indicate that the plaintiff's claims against these 2004-2005 defendants are time-barred, but the issue is not that straightforward.

The plaintiff first argues that his claims are not time-barred because these defendants have continually violated his rights, with each day that he is

- 3 -

ineligible to visit his daughter "mark[ing] a fresh infliction of punishment that cause[s] the statute of limitations to start running anew. . . ." *Heard v. Sheahan*, 253 F.3d 316, 318 (7th Cir. 2008).

The Seventh Circuit Court of Appeals has instructed that the normal rule is that the statute of limitations begins to run from the date of injury, even when that injury produces lingering consequences. *Savory v. Lyons*, 469 F.3d 667, 672 (7th Cir. 2006). However, that rule does not apply when "a state actor has a policy or practice that brings with it a fresh violation each day." *Id*. Of course, "[d]rawing the line between something that amounts to a 'fresh act' each day and something that is merely a lingering effect of an earlier, distinct violation is not always easy." *Pitts v. City of Kankakee*, 267 F.3d 592, 595 (7th Cir. 2001).

Here, the Court notes that the plaintiff was notified on a specific date that his request for visitation with his daughter was denied, and it was on that date that the plaintiff became aware that an alleged violation of his rights had occurred. As such, the plaintiff's continued ineligibility to visit with his daughter is not a fresh act on the part of these defendants each day; it is the natural consequence of the discrete act that occurred when Kingston denied the plaintiff's request and determined the requirements that the plaintiff would have to satisfy before visits would be allowed. See e.g., *Savory v.* Lyons, 469 F.3d 667, 673 (7th Cir. 2006); *Pitts*, 267 F.3d 592, 595-96 (7th Cir. 2001). The

- 4 -

continuing violation doctrine does not apply in these circumstances.

Next, the plaintiff argues that the defendants should be estopped from asserting the statute of limitations defense because Kingston's letter in 2005 fraudulently led him to believe that it would be possible for him to complete the required programming before his daughter reached the age of majority.

The defendants argue that Kingston's letter was not fraudulent. The letter merely said, "visitation . . . would only be allowed after completion of recommended programming[.]" (ECF No. 59 at 13.) The plaintiff did not seek clarification from Kingston about what programming was required or when that programming would be offered. However, the plaintiff alleges in his complaint that he had been informed in 2002 during prison intake assessment and evaluation "that he was required to take part in a prison psychological sex offender treatment assessment," so he knew as of that date that it was a possibility that sex offender treatment programming would be part of his programming plan. (ECF No. 15, ¶ 52.)

The Court agrees with the defendants that Kingston's letter was not misleading. Kingston stated that the plaintiff would be allowed visits from his daughter only after the plaintiff completed the recommended programming. This is a true statement. If the plaintiff assumed from this statement that sex offender treatment was not part of his programming plan or that he had some control over when the programming could be completed, this was the plaintiff's

- 5 -

error.  Such conclusions are not implied by Kingston's statement nor is drawing such conclusions reasonable.  The statements in Kingston's letter may have been vague, but they were not fraudulently so.  Because there was no fraudulent conduct, the defendants are not estopped from asserting the statute of limitations defense.

In short, the Court concludes that the claims against Michael Thurmer, Richard Raemisch, Pamela Fuller, Philip Kingston, and Jane Doe (probation and parole agent from 2004-2005) are time barred, and the Court dismisses these defendants.

B.    Personal Involvement

Defendant O'Donnell argues that she should be dismissed because her only involvement was to affirm the dismissal of the 2013 offender complaint. She argues that, "[I]n order to recover damages against a state actor under § 1983, a plaintiff must show the actor was 'personally responsible for the constitutional deprivation.'"  *Higgins v. Johnson*, 346 F.3d 788, 793 (7th Cir. 2003) (quotations omitted).  She points out that, "ruling on a grievance does not make the actor personally responsible—it 'does not cause or contribute to the violation.'"  (ECF No. 42 at 7) (quoting *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007)).  O'Donnell concedes that a complaint examiner may be liable if she "routinely sent each grievance to the shredder without reading it" or if she "intervened to prevent the medical unit from delivering needed care," but

- 6 -

the plaintiff makes no such allegations. (ECF No. 42, at 8) (quoting *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009)). In fact, the plaintiff clarifies that he "is not suing . . . O'Donnell for the way [she] ruled on [the plaintiff's] grievances." (ECF No. 59 at 17.)

The plaintiff tries to save this claim by arguing that O'Donnell's "actions and policies outside of the administrative complaint process directly and indirectly caused the violations of [the plaintiff's] constitutional rights." (ECF No. 59 at 18.) The Court believes that the "actions and policies outside of the administrative complaint process" the plaintiff is referring to is the policy that prevents prisoners from taking sex offender programming until they near their release date. However, the plaintiff's complaint does not challenge this policy, and so it is not at issue in this case. The plaintiff has challenged only the decision that he must take sex offender programming before he will be allowed to visit his daughter. This is not a policy but a discretionary decision made by individual defendants.

The plaintiff's complaint is clear that O'Donnell did not make this decision; she only affirmed the dismissal of the plaintiff's inmate complaint challenging that decision. The Court initially allowed the plaintiff to proceed on a claim against O'Donnell because it was possible that O'Donnell had mismanaged the handling of his inmate complaint when she affirmed the dismissal of the inmate complaint (e.g., by sending the inmate complaint to the

shredder); however, the plaintiff has now clarified that he challenges only her actions unrelated to her handling of his inmate complaint. This clarification is fatal to the plaintiff's claim against O'Donnell because he fails to allege that she was involved in any relevant way outside of the grievance process.[1]

Finally, the plaintiff argues that O'Donnell should remain in the case because "a state official can be sued for injunctive relief." (ECF No. 59 at 22) (citations omitted). The defendants addressed this argument only briefly, arguing that if O'Donnell remains in this lawsuit for this purpose, the Court should dismiss the claims against her in her personal capacity and the claims against her for money damages. Based on the defendants' argument, it is unclear to the Court whether the remaining defendants (i.e., Debra Adams and Tim Haines) have the authority to grant the injunctive relief that the plaintiff seeks. As such, the Court will not dismiss O'Donnell from this action, but it will dismiss the plaintiff's claims against her in her personal capacity and the claims against her for money damages.

---

[1] The plaintiff also argues that he was entitled to due process before the decision was made to require sexual offender programming in connection with his conviction for armed robbery. Again, though, the plaintiff does not allege that this decision was made by O'Donnell. Thus, even if the plaintiff had been granted leave to proceed with a due process claim, he would not have stated such a claim against O'Donnell.

- 8 -

NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT the defendants' motion for judgment on the pleadings (ECF No. 41) is **GRANTED** in part.

IT IS ALSO ORDERED THAT defendants Michael Thurmer, Richard Raemisch, Pamela Fuller, Philip Kingston, and Jane Doe (probation and parole agent from 2004-2005) are **DISMISSED** from this lawsuit.

IT IS FURTHER ORDERED THAT the plaintiff's claims against Cindy O'Donnell in her personal capacity and the claims against her for money damages are **DISMISSED**.

Dated at Milwaukee, Wisconsin, this 28th day of December, 2015.

**BY THE COURT:**

s/ Pamela Pepper
for **HON. RUDOLPH T. RANDA**
**U.S. District Judge**