UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

CLARENCE M. EASTERLING,

        Plaintiff,

v.

        Case No. 14-cv-1392-pp

DEBRA ADAMS, TIM HAINES,
and CINDY O'DONNELL,

        Defendants.

---

**DECISION AND ORDER GRANTING THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DKT. NO. 71), GRANTING THE PLAINTIFF'S MOTION TO REFILE HIS RESPONSE TO DEFENDANTS' PROPOSED FINDINGS OF FACT (DKT. NO. 119), AND GRANTING HIS MOTION TO SEAL EXHIBIT 747 AND TO FILE A REDACTED COPY (DKT. NO. 121)**

---

        Plaintiff Clarence M. Easterling, who is representing himself, is incarcerated at the Wisconsin Secure Program Facility (WSPF). On June 15, 2015, Judge Rudolph Randa (the judge assigned to the case at that time) screened the plaintiff's amended complaint under 28 U.S.C. §1915A, and permitted him to proceed on claims that eight of the nineteen defendants named in the complaint had violated his constitutional rights when they refused to allow him visits with his minor daughter. Dkt. No. 20.

        On December 28, 2015, this court (signing on behalf of Judge Randa, who had written the order but was not in the office to sign it due to medical issues) granted in part defendants' motion for judgment on the pleadings. Dkt. No. 61. Judge Randa dismissed five of the eight defendants—Michael Thurmer,

1

Richard Raemisch, Pamela Fuller, Philip Kingston, and Jane Doe—because he found that the plaintiff's claims against them were barred by the statute of limitations. See id. at 3-6.

In his complaint, the plaintiff sought several kinds of relief. He asked the court to issue an injunction ordering "all defendants who have authority to do so" to allow him visitation with his daughter. Dkt. No. 1 at 15. He asked for a declaratory judgment, declaring that he had a right to visitation with his daughter. Id. And he asked for "presumed," compensatory and punitive damages. Id. at 15-17. In its December 28, 2015 order, the court dismissed the plaintiff's claims against Cindy O'Donnell in her personal capacity, and dismissed the plaintiff's claim for money damages against her. Dkt. No. 61 at 9. Defendant O'Donnell remained in the case only in her official capacity, with relation to the plaintiff's requests for injunctive and declaratory relief.

On February 19, 2016, the remaining defendants (Debra Adams, Tim Haines, and O'Donnell) filed a motion for summary judgment. Dkt. No. 71. That motion was fully briefed on June 29, 2016.[1] On July 7, 2016, Judge Randa referred the case to Magistrate Judge Patricia Gorence for mediation. Dkt. No. 109. On August 2, 2016, the case was reassigned to this court. On October 18, 2016, Judge Gorence advised the court that mediation was unsuccessful, and she returned the case to the court.

---

[1] Shortly after filing his response materials, the plaintiff filed two motions. The first requested that the court allow him to refile his responses to the defendants' proposed findings of fact in order to reproduce the defendants' original proposed facts. Dkt. No. 119. The second requested the court to allow him to seal Exhibit 741, and file a redacted version of the exhibit for the public docket. Dkt. No. 121. The court will grant both motions.

For the reasons explained in this decision, the court grants the defendants' motion for summary judgment, and dismisses this case.

## I. RELEVANT FACTS[2]

### A. *The 2004 Visitation Request and Denial at Waupun*

In 2004, while incarcerated at Waupun Correctional Institution, the plaintiff asked, in accordance with the relevant policies, that institution officials allow him to have visits with his three-year old daughter. Dkt. No. 106 ¶37. Pamela Fuller (who is no longer a defendant), acting as the warden's designee, completed a form denying that request. Dkt. No. 105 at 4. In the form, Fuller explained,

> [Warden Kingston] has reasonable grounds to believe that the inmate's offense history indicates there may be a problem with the proposed visitation [309.08(4)(f); [and]

> [Warden Kingston] has reasonable grounds to believe that [the proposed visitor] may be subjected to victimization. [309.08(4)(g)].

Dkt. No. 106 at ¶39.

The plaintiff appealed the denial through the inmate complaint review system. Id. at ¶40. Inmate Complaint Examiner (ICE) James Muenchow (who is no longer a defendant) found that the denial complied with Wis. Admin. Code § DOC 309.08(4)(f) and (4)(g). Id. at ¶41. He explained that warden's decision refusing to approve a proposed visitor is both discretionary and unconditional,

---

[2] The court takes the facts from the "Reply to Plaintiff's Response to Defendants' Proposed Findings of Fact" (dkt. no. 106) and the "Response to Plaintiff's Proposed Findings of Additional Fact and Conclusions of Law in Opposition to Defendants' Motion for Summary Judgment" (dkt. no. 105).

3

and that an ICE would not challenge or second-guess the warden's discretion. Id. He then recommended that the offender complaint be dismissed. Id.

Michael Thumer (who no longer is a defendant) was a deputy warden at Waupun at this time; he agreed with Muenchow's recommendation and dismissed the offender complaint, finding no reason to overrule the visitation decision. Id. at ¶7, 42.

The plaintiff appealed the decision to the Corrections Complaint Examiner's (CCE) office, which recommended that the appeal be dismissed. Id. at ¶43. The Office of the Secretary accepted the CCE's recommendation, and dismissed the appeal. Id. at ¶44. The plaintiff also appealed the denial to Philip Kingston (who no longer is a defendant), the warden at Waupun at that time. Id. at ¶45. Kingston responded to the appeal with the following:

> I am in receipt of your correspondence of 12/21/04 appealing the denial of your daughter to your approved visiting list. I note you have appealed this denial through the Inmate Complaint Review System and have since received a decision from the Secretary of the Department of Corrections. The reason for denial is clearly stated in the complaint decision.
>
> You ask if you will ever be allowed to visit with your daughter while you are incarcerated. You have the ability to influence that decision through your participation and successful completion of recommended treatment programming.

Id.

The plaintiff's recommended programming included Cognitive Group Intervention Program, Vocational Education, Sex Offender Treatment, and Anger Management. Id. at ¶46.

4

B. *Policies for Requesting Visitors at WSPF*

Pursuant to DAI Policy #309.06.01 and WSPF Procedure #900.302.01, the current process for obtaining approval for a visitor at WSPF is as follows:

(a) The inmate is responsible for mailing a Visitor Questionnaire form (DOC-21AA) to proposed visitors.

(b) Each proposed visitor, including minors, shall complete a DOC-21AA form and send the completed form directly to the facility where the inmate is currently placed.

(c) Once the DOC-21AA form is returned, it is screened for completeness, legibility, appropriate signatures, conformance to the allowable number of visitors on the Visitor List, and the elapsed time since any previous denials or removals of a proposed visitor from the inmate's visitor list.

(d) Upon return of the DOC-21AA form, a background check of the proposed visitor is conducted including his or her relationship to or activities with the inmate.

(e) Input from an agent may be requested under special circumstances. Any agent recommendations for denial shall be accompanied by designation on a DOC-2429 form, of which administrative code would apply to the denial, and a narrative explanation of why the agent believes the code applies.

(f) When considering visitors for inmates with sexually-related offenses, a completed Sex Offender Assessment Report (DOC-1577 or DOC-1577A) must be in the inmate's file and have been reviewed prior to approval.

(g) Consultation from Psychological Services staff should be requested when there is a possibility of victimization and staff cannot arrive at a clear decision regarding visitation.

5

(h) If the proposed visitor is denied, a Denial letter (DOC-161) is completed stating the reasons for the denial based on criteria identified under Wis. Admin. Code §DOC 309.08(4), such as the Warden has reasonable grounds to believe that the inmate's offense history indicates there may be a problem with the proposed visitation or the proposed visitor may be subjected to victimization.

(i) All visitor denials shall be staffed with a supervisor prior to finalization of the denial.

(j) The proposed visitor may appeal the denial of visitation in writing to the Warden/designee of the facility where the inmate is located. An inmate may appeal this decision through the inmate complaint review system (ICRS).

(k) If a proposed visitor has been denied from the visitor list, they may not resubmit a new Visitor Questionnaire (DOC-21AA) for reconsideration for a minimum of six months after denial.

Id. at ¶105.

In addition, Wis. Admin. Code § DOC 309.08(1)(f) permits inmates who have been denied visits with a particular visitor to resubmit a proposed visitor's name for reconsideration after six months. Id. at ¶49.

C.  *The Plaintiff's 2013 Inquiries Regarding the 2004 Visitation Denial*

The plaintiff was transferred to WSPF on April 11, 2013. Id. at ¶68. Defendant Timothy Haines was the warden at WSPF at that time. Id. at ¶4. Defendant Debra Adams was, and is, a probation and parole agent. Id. at ¶5. Defendant Cindy O'Donnell manages special projects for the office of the secretary. Id. at ¶6.

On May 13, 2013, the plaintiff sent an information request to defendant Haines. Id. at ¶78. In the request, the plaintiff stated:

6

> Almost nine years have lapsed since my original request to have my daughter placed on my visiting list was submitted. She will be 12 in July of [2013] and I have 25 years in prison. Will [WDOC] allow me to see my daughter before she turns 18? Will DOC ever allow me to receive a visit from daughter? It states on my visitor list that the reason is under review; can my daughter be placed on my approved visitor list? Please provide me with a reason for your denial of the request.

Id. at ¶87.

Haines states that he does not recall reading the plaintiff's information request at that time. Id. at ¶78, 89. Haines's assistant, Stephanie Brown (who is not a defendant), handled the plaintiff's request by telling him to contact Client Services. Id. at ¶78.

On May 15, 2013, defendant Adams received an email from Client Services Assistant Mary Lee (who is not a defendant), asking for input into the plaintiff's request about whether he would be allowed visits with his daughter. Id. at ¶79. Lee informed Adams that the plaintiff's daughter had been denied visitation on December 2, 2004, because the then-warden at Waupun had reasonable grounds to believe that the inmate's offense history indicated there might be a problem with the proposed visitation, and that the proposed visitor may be subject to victimization. Id. Lee also informed Adams that the plaintiff was incarcerated in connection with convictions for armed robbery, disorderly conduct, and second-degree sexual assault, which had been amended to fourth-degree sexual assault. Id. at ¶80.

That same day, Lee sent a follow-up email to Adams, in which she described correspondence from the then-warden written in 2005, which stated

7

that the plaintiff was to complete the recommended treatment program. Id. at ¶81. Lee noted that the plaintiff had been on the waiting list for the Sex Offender Treatment (SOT) program since April 29, 2002, but that WSPF did not offer SOT. Id.

Adams responded to Lee's email shortly after she received it, and stated that she agreed with Kingston's decision that the plaintiff needed to complete programming. Id. at ¶83. Lee responded to the plaintiff: "I did hear back from your agent. She stated you do need to complete the programming." Id.

Adams clarifies that her email to Lee was not a formal denial of a visitation, because there was no outstanding visitation request to deny; instead, her response provided only her opinion based on the limited and general inquiry from Lee. Id. at ¶85. Had there been a formal visitation request, Adams says, she would have expected there to be a completed Visitor Questionnaire (DOC-21AA) or Visitor Questionnaire Assessment and Evaluation (DOC-21HH) form, and she would have expected the prison to request a formal investigation. Id.

When the prison requests a formal investigation, it asks the agent (here, Adams) to conduct an investigation and then fill out a form in WICS (the Wisconsin Integrated Corrections System, which helps the DOC track and maintain information on an inmate) outlining his/her recommendation on the proposed visitor. Id. at ¶86. Adams states that, given the wording of Lee's email, the absence of a completed visitor form, and the fact that no one asked

8

her to complete a WICS form, she did not interpret Lee's email to be a formal request for an investigation. Id.

On November 19, 2013, the plaintiff sent another information request to Haines, stating that he wanted to have visits from his daughter but that he was told he needed to complete SOT first. Id. at ¶87. He asked who was in charge of SOT so that he could be put on the list. Id. The plaintiff did not clarify in his request that the visitation "denial" had occurred nearly a decade earlier. Id.

Haines responded to the plaintiff on December 9, 2013, and informed him that, if he was unhappy with the results of his daughter's application for visitation, he could file an inmate complaint in accordance with Wis. Admin. Code DOC § 310, and/or his daughter could send a written appeal to Haines. Id. at ¶90. Haines states that, when he wrote this response, he did not know that the "denial" the plaintiff was referring to had occurred ten years earlier. Id. at ¶91. He also explains that he did not believe the plaintiff's interview/information request slip was a formal visitation request, because the plaintiff did not complete the visitation form or otherwise comply with the policy. Id. at ¶89.

On January 1, 2014, the plaintiff filed an offender complaint asserting that the denial of his visitation with his daughter was unreasonable and that he wanted visits with his daughter. Id. at ¶92. The ICE, Ellen Ray (who is not a defendant), recommended that the offender complaint be dismissed. Id. at ¶93-94. On January 28, 2014, Haines, who reviewed the complaint to confirm that staff had responded appropriately, dismissed the complaint. Id. at ¶95, 99. The

plaintiff appealed Haines's decision to the CCE's office; defendant Cindy O'Donnell dismissed the appeal on February 27, 2014. Id. at ¶96, 98.

## II. DISCUSSION

### A. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Ames v. Home Depot U.S.A., Inc., 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." Anderson, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

A party asserting that a fact cannot be disputed or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be

admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

B. The Defendants' Motion for Summary Judgment

The alleged violation about which the plaintiff complains is the denial of his request to have visits with his daughter. "Parents have a liberty interest, protected by the Constitution, in having a reasonable opportunity to develop close relations with their children." Harris v. Donahue, 175 Fed. App'x 746, 747 (7th Cir. 2006) (quoting Hodgson v. Minnesota, 497 U.S. 417, 483 (1990)). In the prison context, however, "'the very object of imprisonment is confinement,' and 'many of the liberties and privileges enjoyed by other citizens must be surrendered by the prisoner.'" Id. at 748 (quoting Overton v. Bazzetta, 539 U.S. 126 (2003)). "When a prison policy . . . impinges on a prisoner's constitutional rights, courts assess whether it is reasonably related to legitimate penological interests." Id. A court looks at four factors in making this assessment:

> (1) whether a rational connection exists between the prison policy regulation and a legitimate governmental interest advanced as its justification; (2) whether alternative means of exercising the right are available notwithstanding the policy or regulation; what effect accommodating the exercise of the right would have on guards, other prisoners, and prison resources generally; and (4) whether ready, easy-to-implement alternatives exist that would accommodate the prisoner's rights.

Id. (citing Overton at 132).

To prevail on a §1983 claim, a plaintiff must demonstrate, in part, that the defendants intentionally caused the alleged deprivation of the plaintiff's

11

constitutional rights. See Donald v. Polk Cnty., 836 F.2d 376, 379 (7th Cir. 1988). In other words, the defendants must have personally caused or participated in the alleged violation. Hildebrandt v. Illinois Dept. of Natural Resources, 347 F.3d 1014, 1039 (7th Cir. 2003). Defendants Haines and Adams argue, in part, that they were not personally involved in denying the plaintiff's request for visitations with his daughter. They explain that Kingston made the one and only denial, in 2004. Any input Haines and Adams had in 2013 was limited to responding to the plaintiff's general inquiries about Kingston's 2004 denial. The defendants emphasize that, following the 2004 denial, neither the plaintiff nor the mother of the plaintiff's daughter ever formally resubmitted his daughter's name in an effort to have her added to the plaintiff's visitor list. Dkt. No. 106 at ¶50, 76.

Even if the institution's denial of the plaintiff's request to add his daughter to his visitation list violated the plaintiff's constitutional rights (and the court does not make a finding on that question one way or the other), the court could not find Haines and Adams liable for that violation unless they personally made or participated in the decision to deny the plaintiff's request. They did not. The undisputed evidence shows that the plaintiff made only one formal request for visitation with his daughter under the relevant policies. He made that request in 2004, and neither Haines nor Adams had any involvement in the decision to deny that request.

The plaintiff first argues that Haines and Adams *should have* known that he intended his information requests to serve as formal requests for visitation.

12

This argument fails, however, because §1983 requires intentional action; in other words, courts hold defendants liable only for what they actually knew, not for what they should have known. Holding a defendant liable for what he or she should have known would allow plaintiffs to bring §1983 suits based on negligent conduct. The law is well settled that negligence is not actionable under §1983. Daniels v. Williams, 474 U.S. 327, 331, 333-34 (1986); Davidson v. Cannon, 474 U.S. 344, 347-48 (1986); Russ v. Watts, 414 F.3d 783, 788-89 (7th Cir. 2005).

Here, both Haines and Adams state that they did not view the plaintiff's information requests as formal requests for visitation, because the relevant policies don't allow inmates to make visitation requests in that way. Instead, Haines and Adams viewed the information requests as just that: requests for information, and they responded accordingly—quickly and without investigation. The plaintiff has not provided evidence to rebut Haines' and Adams' sworn explanations; he has not, for example, pointed to other situations where these defendants handled similar informal requests for information as formal visitation requests pursuant to policy, or shown that either defendant went through the steps or investigations that normally would occur after an inmate made a formal request. There is no evidence in the record to support a conclusion that either Haines or Adams viewed the plaintiff's inquiries as formal requests. If the plaintiff did not make formal requests to Haines or Adams, they cannot be held liable for denying such requests.

Second, the plaintiff argues that, if his informal inquiries were insufficient to serve as formal requests, Haines or Adams should have advised him to comply with the relevant policies for making a visitation request. This argument also fails. The defendants have stated that they did not believe that the plaintiff's information requests were formal requests for visitation. If they had viewed the information requests as an effort to ask that the plaintiff's daughter be added to his visitor list, it is *possible* that they might have instructed him to comply with the relevant policies for making a formal request. But even if they believed that the plaintiff was trying to make a formal request and yet didn't direct him to those policies, their failure to do so wouldn't have violated the Constitution. The alleged act of denying the plaintiff his ability to visit with his daughter is what is actionable under the Constitution, not the defendants' alleged failure to inform the plaintiff of relevant institutional policies.

Third, the plaintiff argues that he was prohibited from resubmitting a formal request (as permitted by the relevant policies) because in 2004, Kingston told him that he would not be permitted to visit with his daughter until he completed SOT. The plaintiff overstates Kingston's 2004 communications with him. The record evidence does not indicate that Kingston ever told the plaintiff that he could not resubmit a request to visit with his daughter. Rather, the record shows that when the plaintiff asked Kingston if he would ever be allowed a visit from his daughter, Kingston stated, "You have the ability *to influence that decision* through your participation and successful

completion of recommended treatment programming." Dkt. No. 106 at ¶45 (emphasis added). Kingston's response implies that if the plaintiff completed the recommended treatment programming, it might help him with regard to the decision on any future visitation request he might make. Further, Kingston did not say that the plaintiff could not receive a visit from his daughter until he completed the required programming, as the plaintiff argues; Kingston stated only that completion of the programming could influence any future decision about whether the plaintiff could have a visit from his daughter.

Kingston, the court also notes, was the warden at Waupun. Haines and Adams worked at WSPF. The policies are clear that each warden has discretion regarding who may visit inmates at that warden's institution. Even if Kingston had prohibited the plaintiff from submitting additional visitation requests (which he did not) asking that his daughter be allowed to visit him at *Waupun*, the plaintiff offers no evidence that a decision by Kingston would be binding on the warden of WSPF.

Finally, the plaintiff argues that the court should construe Haines' dismissal of the plaintiff's inmate complaint as a formal denial of his request for visitation with his daughter. The court declines to adopt this view. Reviewing grievances typically does not expose prison officials to liability under §1983, because ruling on grievances "does not cause or contribute to the violation." George v. Smith, 507 F.3d 605, 609 (7th Cir. 2007). It is undisputed that the plaintiff did not follow the relevant policies for making a formal request for visitation, so the institution never initiated a formal process for approving

15

the plaintiff's daughter as a visitor. The process by which Haines reviewed the inmate grievance differs greatly from the process by which Haines would have reviewed a formal visitation request. If the court were to consider Haines' decision in the grievance procedure as a decision on a visitation request, it would essentially gut the requirement that inmates comply with the relevant visitation policies. The court declines to substitute the grievance procedures for an inmate's obligation to comply with the relevant visitation policies.

In short, the court will dismiss the plaintiff's claims against defendants Haines and Adams, because they are not liable for Kingston's decision to deny the plaintiff's visitation request.[3] The court presumes, based on the relevant policies, that the plaintiff's daughter may resubmit a completed visitor form to start the formal review process to determine whether she may be added to her father's visitor list. The court will not offer an advisory opinion as to how Haines or Adams should evaluate such a request.

Finally, the court will also dismiss O'Donnell. The plaintiff asked that she remain in the case because "a state official can be sued for injunctive relief." Dkt. No. 61 at 8. But the "injunctive relief" the plaintiff requested was an order requiring the institution to allow the plaintiff to have visitation with his daughter; because, to the court's knowledge, no one at WSPF ever has denied a formal, procedurally-correct request from the plaintiff to add his daughter to his visitation list, such injunctive relief is not appropriate (and the plaintiff has

---

[3] Because the court concludes that Haines and Adams were not personally involved in denying the plaintiff's visitation request, it is unnecessary for the court to address whether any such denial was reasonable or whether the defendants are entitled to qualified immunity.

16

not met the standard for injunctive relief). Because there is no basis for the court to grant injunctive relief, it will dismiss O'Donnell in her official capacity.

## III. CONCLUSION

The court **GRANTS** the plaintiff's motion for leave to refile his response to defendants' proposed findings of fact. Dkt. No. 119.

The court **GRANTS** the plaintiff's motion to seal Exhibit 747, and for leave to file a redacted copy of the exhibit. Dkt. No. 121.

The court **GRANTS** the defendants' motion for summary judgment (dkt. no. 71), and **DISMISSES** the plaintiff's complaint. The clerk of court will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. See Federal Rule of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. See Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must

17

be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 22nd day of February, 2017.

BY THE COURT:

_____
HON. PAMELA PEPPER
United States District Judge